(Hamilton County Court of Common Pleas.)

IN THE MATTER OF THE ASSIGNMENT OF THE GEORGE D. WINCHELL MANUFACTURING COMPANY.

---

*Confessed judgment by a corporation which afterwards makes an assignment.*

---

1. A judgment taken on a cognovit note given by a corporation for a pre-existing debt several months before it made an assignment for the benefit of its creditors, but on which judgment was taken, execution issued, and levy made only a few hours before the deed of assignment of the corporation was filed, is valid and the levy thereunder gives a good lien on the property of the corporation levied upon.
2. In such case a probate court has no authority by its order to sanction an agreement between the judgment creditor and the assignee of the corporation to the effect that the sheriff should surrender the property levied upon to the assignee, the court ordering that upon such surrender the lien of the judgment creditor should be preserved, and the proceeds of the sale of such property applied to the payment of such judgment, thus fixing the priority of liens in advance, and depriving the general creditors of their day in court.
3. At a meeting of the board of directors, at which it was concluded to make the assignment, a resolution was passed authorizing the president to confess judgments on the cognovit note in question in this case, which was past due, and for the payment of which demand had been made, and refused. The secretary of the corporation, who was the husband of the holder of the note, thereupon, without direction from the directors, advised his wife to take the judgment. There was no arrangement when the note was given that the holder should be advised by the corporation to take judgment to protect herself. Such resolution by the directors, and notice by the secretary to his wife, does not affect her rights under her judgment on the note

(Decided May, 1894.)

HOLLISTER, J.

This cause comes here on appeal from the probate court.

The George D. Winchell Manufacturing Company, hereinafter called "assignor," borowed from Ida H. Upson $10,000 on March 1, 1892. On July 12, 1893, the assignor, in pursuance of a resolution of its board of directors, executed and delivered to her its promissory note as follows:

"$10,000.

"On demand, for value received, we promise to pay to Ida H. Upson, or order, ten thousand dollars, with interest from date till paid at seven per cent. per annum, payable semi-annually in advance. And we hereby authorize and empower any attorney at law of any court of record, at any time after this note becomes due, to appear for us without process, in any court of record, and confess judgment for the said amount, interest and costs in favor of the legal holder, indorsee or assignee hereof, and release all errors which may occur in the legal proceedings herein authorized, and we also release all right of appeal, stay of execution and the power and privilege of holding any personal and real property exempt from execution for the enforcement of said judgment; and said attorney is hereby authorized to enter such release in said judgment."

"Witness our hand and seal this twelfth day of July, A. D. 1893.

"THE GEO. D. WINCHELL MFG. CO.,

"*By* GEO. D. WINCHELL, *Pres't.*"

The note is indorsed: "Interest paid to September 1, 1893."

On the eighteenth of September, 1883, the directors held a meeting, at which, as appears by the minutes, "the president stated that the meeting of the board had been called for the purpose of considering the financial condition of the company, and taking such steps as were necessary to protect the stockholders and creditors from loss;" and thereupon a resolution to make a general assignment for the benefit of creditors was unanimously adopted, which resolution was accompanied by the following preamble: "Whereas, the financial condition of The George D. Winchell Manufacturing Company is such that it can no longer continue business without serious loss to its stockholders and jeopardy to the interests of its creditors," etc.; "now be it resolved, etc., that the assignment be made." Among other resolutions was the following: "Be it resolved by the Board of Directors of The George D. Winchell Manufacturing Company, that the president of said company be, and he hereby is, authorized to enter judgments by confession or cognovit, and other notes past due to the following persons and in the following order: One to John C. Wick and Henry Wick; two to John C. Wick and Henry Wick, as executors, on notes for certain sums; three to Ida H. Upson for the sum of ten thousand dollars ($10,000) on a cognovit demand note dated July 12, 1893, demand having been made and payment refused."

The meeting of the directors was held at the office of the assignor at 10 o'clock a. m. The deed of assignment was filed at 2 o'clock p. m. the same day. Previously thereto on that day the petition of plaintiff for judgment on her note was filed, and simultaneously the answer of the assignor by John F. Fisk, an attorney of record in this county, was filed, confessing judgment as provided in the note. A judgment entry was made at once awarding execution, which was levied by the sheriff on all the real and personal property of the assignor, and was returned by him at 1:45 o'clock p. m. These papers and proceedings appear to be regular in all respects.

Thereafter the sheriff turned the property levied on over to the assignee on an agreement made by the judgment creditors with the assignee,

under the sanction of an order of the probate court, entered September 28, 1893, which order contains this language: "And it further appearing to the court that said judgment creditors have consented that the assignee herein may take possession of said property subject to said levies under said execution and judgment upon condition of retaining their respective liens acquired thereby, it is hereby considered by the court and so ordered that the assignee herein, John E. Bruce, be and he is hereby authorized and directed to sign articles of agreement with said judgment creditors and said sheriff whereby, upon the surrender to him, the said assignee, of the property levied upon as aforesaid, the respective liens of said judgment creditors shall be preserved, and the moneys arising from the sale of said property be applied so far as it may reach to the payment of said liens in their order as above, upon the order of this court."

It is claimed by counsel for Mrs. Upson that this agreement, made by the assignee, the representative of all of the creditors, under sanction of the court having jurisdiction of the subject-matter, is binding on the general creditors. While there may be many reasons why the disposition of the property of an insolvent concern may be more advantageously made by an assignee than by the sheriff, quite sufficient to support an agreement to that effect made by competent persons, yet the assignee's powers are limited by the provisions of the statute regulating the administration of the assets of the insolvent. *Davis* v. *Davis,* 11 Ohio St. 386, 391; and while it is true that the probate court may, under the ruling in *Sayler* v. *Simpson,* 45 Ohio St., and by the authority of section 6145 as amended, 89 O. L. 135, consider questions of equity arising in fixing the priority of liens, there is no authority in that court to judge in advance, by sactioning such an agreement, on such questions, and shut out the general creditors from the day in court to which they are entitled. *Sayler* v. *Simpson, supra.*

The entry of September 28th, recognizes this in that part of the order requiring the liens to be paid upon the order of the court. In the entry there is no finding of priority of lien, or existence of lien. It recites, by way of preamble, that all of the property has been levied on by virtue of certain judgments, including Mrs. Upson's, but that is no finding upon a hearing regularly had in the exercise of the jurisdiction of that court in ascertaining the existence and priority of liens in matters of assignment, and does not, as I think, work an estoppel as against the interests of the general creditors, however far it may operate to bind the acquiescing judgment creditors.

But whether it does or not, and assuming that the contention of the general creditors on that point is correct, then the case turns on whether or not the confession of the judgment was in effect the giving of a preference by the corporation to Mrs. Upson, and void under *Rouse* v. *Bank,* 46 Ohio St. 493.

It cannot be doubted but if the note had been given on the day of assignment, and judgment taken at once in pursuance of its powers and the resolution of the directors passed that day, the principles on which that case was decided would have been directly applicable, for the judgment ereditor offered no evidence to rebut the presumption that the concern was insolvent, and had ceased to carry on its business, raised by the fact that the inventory of its assets showed them to be less than the liabilities, and by the declaration of the corporation solemnly made on the day of its assignment. But the case at the bar is different. Mrs. Upson acquired her rights when the judgment note was delivered to her, July 22, 1893. There was no motion or affirmative act required of the corporation to invest her with necessary powers to make her security effectual at such time as she chose, it only being necessary that she make demand for payment before taking her judgment. The resolution of September 28th gave her no new

rights or additional powers, and was not a necessary condition precedent to her proceeding to secure herself, or as contained in the note itself and in the resolution of July 12th.

It is quite possible that the concern was insolvent on that day, but there is no evidence of it; and even if it were, yet if it continued to do business, its directors not realizing that its collapse was inevitable and but a question of a few months, and in good faith gave such a note, it can scarcely be doubted that the creditor's rights to a judgment thereon would have been complete. In the *Rouse case* the court, on page 508, declines to give an opinion in such a case; but it may fairly be inferred what the court would have done had the question been before it from the reasons given for the conclusions reached on the facts in the case. The "one transaction" theory, that the making of an assignment for the benefit of creditors generally immediately subsequent to the execution and filing of chattel mortgages by way of preference to certain creditors, is, in contemplation of law, the performance of a single act, has been disposed of in Ohio by the case of *Cross* v. *Carsten*, 49 Ohio St. 548, and could have no application to this case had that contention prevailed, for here the right to take the judgment was given while the corporation was in full life, more than two months before the assignment was made.

But it is claimed by counsel for the unsecured creditors that the resolution of September 18th was equivalent to notice to Mrs. Upson to take her judgment, and brings the case within the decision in *Hanford Oil Co.* v. *First National Bank*, 126 Ill., 584. That was a case in which, where a note similar to Mrs. Upson's was given to the assignor with an agreement that it would notify the holder when it should take steps to protect himself, he took his judgment by confession just before the assignment. The judgment was held void as against general creditors. In the case at bar there was no agreement of any kind. On the day of the assignment, the secretary of the assignor, who was the husband of Mrs. Upson, sent her word that she had better take her judgment. He was not instructed by the assignor to do so. He was in a position to know what action was advisable, and it was his duty to inform his wife of the time when she could put into operation these powers and rights long before given to her, of protecting herself when she thought the time for action had arrived.

The fact that the assignor thought it necessary for Mrs. Upson's protection to pass the resolution, does not affect her rights in the slightest degree. Her husband knew the important fact that the firm was about to make an assignment, and he was justified in telling his wife that the circumstances were such that she had better take her judgment. This was the knowledge which was important to her, not the fact that a resolution had been passed purporting to give her rights which she already possessed.

If the assignor has passed a resolution directing its secretary or any other instrumentality to notify Mrs. Upton, a different case would be presented. In a case in this court, in the matter of the assignment of the *Simpson & Gault Manufacturing Company*, decided February 24, 1890, it was held by OUTCALT, J., that where the assignor had agreed with the creditor at the time the debt was incurred to secure him, the chattel mortgage given for that purpose two days before the assignment, was a valid contract, "which the corporation was bound to see fulfilled, and that in discharging its obligation, the corporation neither impaired nor disturbed any rights pertaining to general creditors," and this, too, although the corporation was insolvent, but had not ceased to carry on business.

If the assignor had, on July 12, when it gave Mrs. Upson the note, agreed to notify her when it would be wise for her to proceed, the case

would have resembled the case in the 126th Illinois Reports. What the law of Ohio is, under such circumstances, it is not necessary to decide. The case referred to, decided by this court, would indicate that the Illinois decision would not be followed here. Suffice it now to say, that the facts in the Illinois case are not the same as the facts in the case at bar, and that case is no precedent of value in Ohio. Decree accordingly.

*C. H. Avery* and *Bromwell & Bruce,* for Mrs. Upson.

*W. W. Ramsey,* for unsecured creditors.